Battle,
 
 J.
 

 The first exception is, that the commissioner has allowed the tenant for life, interest, paid by heron certain debts of the testator accrued before and after his death. This exception is founded upon the following clause of the testator’s will: “ In the first place, I do hereby devise all my estate, both real and personal, to my wife, Elenor Haywood, to have, hold, occupy and use the same, for her comfort and maintenance, and for the maintenance and education of my younger children, for and during the term of her natural life; and, whereas, also, I am somewhat involved in an important law-suit, of a doubtful issue, and it may be deemed expedient to sell a part or the whole of my real estate in preference to slaves, for the purpose of paying my own debts, and those for which I am bound as security, I do hereby authorise my wife, Elenor Haywood, by and with the advice and consent of my executor, hereinafter mentioned, to sell, mortgage or convey in fee simple absolute, all, or any part of my said real estate, whenever she and my said executor may think it most advantageous to do so; and upon-a sale of the same, or any part thereof, I do hereby authorise my said wife, or my executor after her death, to convey the same in her or their names in fee simple, or for a less estate.”
 

 By another clause of the will, the remainder in the property is given to the testator’s children, and grand-children by a deceased daughter.
 

 The exceptants contend that the widow, as tenant for life, was bound to keep down the interest during her life; while the defendants, admitting the general rule, insist that ¡it is varied by tlm plenary power given to her as an executrix, as well as, tenant for life, as to the time and manner of paying the debts.
 

 
 *164
 
 The exception -must be sustained-upon the authority of the cases referred to by the plaintiff’s counsel;
 
 Smith
 
 v.
 
 Barham
 
 2 Dev. Eq. Rep. 420;
 
 Jacocks
 
 v.
 
 Bozman
 
 1 Dev. and Bat. Eq. 192, and
 
 Jones
 
 v.
 
 Sherard
 
 2 Dev. and Bat. Eq. 179.
 

 The subject was fully discussed in the case of
 
 Jacodks
 
 v.
 
 Bozmm%,
 
 which was a bequest of the testator’s whole estate, consisting principally of slaves, to his wife for life, and after her death, in certain proportions, to other persons. The difficulty was felt and expressed of applying the rule to all cases alike; because, sometimes the property, while yielding great immediate profits, is gradually diminishing in value, while in other instances just the reverse will be the case. If the property given consist both of land and slaves, as in the present case, and the executrix and tenant for life elect to keep both, either during her whole life, or for any indefinite period after the death of the testator, instead of selling immediately for the payment of debts, we cannot imagine any just rule which can be applied other than to require her to keep down the interest of the debts during her life.
 

 2. The second exception is overruled. It appears that some of the slaves, after the death of the testator, ran off and escaped to a free State, and the executrix expended a large sum in having them recaptured and brought home. They were after-wards-sold by her for a less sum than the amount of the expenses incurred in their recapture. The commissioner did not charge the estate with the proceeds of the slaves, nor credit it with the expenses of retaking them. The plaintiffs except because the estate was not debited with the proceeds.
 
 We
 
 think the commissioner was right. There is no pretence that the escape of the slaves was caused by the misconduct or neglect of the tenant for life. They were, while gone, lost to the remainderman, as well as to her. They could be recovered .only by the outlay of a large sum of money. Surely, that ought not to have been borne altogether by her, as the interest of the remainderman was much greater than hers.: Yet it was her duty, both as a temporary owner of these, as well as the holder of other slaves, to have them brought.
 
 *165
 
 back if she could. She acted in good faith, and it is not •sliowm that the object could have been accomplished at a less expense. If the slaves had runaway, and not gone beyond the limits of the State, then, any small expense which might have been necessary in recovering them might, very properly, have been borne by her alone; but where they were lost to all parties, the rule should be different. In most cases, the life tenant would not attempt a recapture of the slaves, if he had to bear the whole or any considerable part of the expense. Where the whole value of the property is not expended in the effort to regain it, the expense should be borne by each party in proportion to his respective interest; but where the whole is expended, then, in the absence of
 
 mala
 
 fieles, the loss must be total to each. As the commissioner has not, in the present case, credited the estate of the tenant for life with the expenses, he did right in not debiting it with the proceeds of the recaptured slaves.
 

 A The fourth exception must be over-ruled, because the executrix was in no default in not paying interest on a debt which was not ascertained until the compromise. Besides, wo cannot see that the compromise embraced any amount which bore interest from an antecedent period of time. The plaintiff in the suit which was compromised, claimed a large sum as being due from the testator, which was resisted by him, and after his death, by his executrix. The compromise in question was then effected, by which the plaintiff agreed to take, and the executrix to pay, a round sum in which there was no distinction of principal and interest, and we cannot say, therefore, that any interest Was included in, it; but, if there were, the executrix had no means of ascertaining what it was, and on that account ought not to be charged with it.' ' i ’ , , ' ’ ,. '
 

 5. The fifth and last exception is also disallowed. The executrix had. duties to perform in that capacity before she took the property as tenant for life. In collecting the assets, converting them into money, and paying the debts due from the estate, she was acting as executrix, and as such we can
 
 *166
 
 not see why she- should, not be allowed commissions as well as any other person acting in that capacity. . It appears from the report that the commissioner has allowed her five
 
 jper cent,
 
 on the amount of the receipts and nothing for disbursements — making the sum of $1320 27, which we think is nothing more than a reasonable allowance for commissions.
 

 The report of the commissioner must be reformed in conformity with this opinion, and may then be confirmed.
 

 Per Curiam, Decree accordingly.